# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| EDGEPOINT CAPITAL HOLDINGS, LLC, | ) ) | CASE NO. 1:18CV2155 |
| Plaintiff, | ) ) | JUDGE CHRISTOPHER A. BOYKO |
| vs. | ) ) | OPINION AND ORDER |
| APOTHECARE PHARMACY, LLC, | ) ) ) | |
| Defendant. | ) | |

**CHRISTOPHER A. BOYKO, J.**:

This matter comes before the Court upon the Motion (ECF DKT #5) of Defendant Apothecare Pharmacy, LLC to Dismiss for Lack of Personal Jurisdiction and Improper Venue, or, in the alternative, to Transfer. For the following reasons, the Motion to Dismiss is denied but the Motion to Transfer is granted pursuant to 28 U.S.C. § 1404(a). The above-captioned case is transferred to the United States District Court for the District of Massachusetts.

## I. BACKGROUND

On September 19, 2018, Plaintiff EdgePoint Capital Holdings, LLC, an Ohio limited liability company, filed this Complaint for Breach of Contract and Contractual Indemnification/Hold Harmless against Defendant Apothecare Pharmacy, LLC, a Massachusetts limited liability company. The Complaint arises out of a Sell-Side Contract signed by Defendant's CEO Rudy Dajie on September 5, 2016 and by Plaintiff's Managing Director Daniel Weinmann on September 6, 2016. Pursuant to the Contract, Defendant engaged Plaintiff on an exclusive basis to assist in the sale of all or part of Apothecare's

assets and to identify potential buyers for the sale of all or part of Apothecare's assets. One of the prospective buyers recommended by Plaintiff was Clearview Capital, LLC, a Connecticut company. Within eighteen months of the termination of the Sell-Side Contract, Defendant entered into a transaction with Clearview for the purchase of part of Apothecare's assets. Plaintiff alleges that Defendant breached its contractual obligations by failing to pay Plaintiff the "success fee" earned due to the successful Apothecare-Clearview deal.

Defendant moves for dismissal for lack of personal jurisdiction and improper venue or alternatively, for transfer to the United States District Court for the District of Massachusetts.

## II. LAW AND ANALYSIS

**Standard of Review**

In deciding whether a court possesses personal jurisdiction, the court applies a two-step inquiry. "First, we must determine whether Ohio law authorizes jurisdiction. If it does, we must determine whether that authorization comports with the Due Process Clause of the Fourteenth Amendment." *Estate of Thomson ex rel. Estate of Rakestraw v. Toyota*, 545 F.3d 357, 361 (6th Cir. 2008). Where personal jurisdiction is challenged, the plaintiff has the burden of establishing that personal jurisdiction exists. *Weller v. Cromwell Oil Co.*, 504 F.2d 927 (6th Cir. 1974). However, the nature of a plaintiff's burden changes depending on the manner in which the district court approaches the motion. *American Greetings Corp. v. Cohn*, 839 F.2d 1164, 1168 (6th Cir. 1988). When a court addresses a motion to dismiss for lack of personal jurisdiction based solely on written materials and affidavits, "the burden on the plaintiff is relatively slight, . . . and the plaintiff must make only a prima facie showing that personal jurisdiction exists in order to defeat dismissal[.]" *Ampco System Parking v.*

*Imperial Parking Canada Corp.*, No. 1:11CV1172, 2012WL1066784, at *2 (N.D. Ohio Mar. 28, 2012) (quoting *Air Prods., & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007)). The plaintiff need only establish jurisdictional claims with "reasonable particularity" and the pleadings and affidavits are construed in the light most favorable to plaintiff. *Id*. The burden is on the plaintiff, however, to establish that jurisdiction exists, and the plaintiff may not merely stand on his pleadings in the face of a properly supported motion for dismissal. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). The plaintiff must set forth specific facts showing that the court has jurisdiction. *Id*. Therefore, dismissal is proper only if all the specific facts which the plaintiff alleges collectively fail to state a prima facie case for jurisdiction. *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996).

The court "does not weigh the controverting assertions of the party seeking dismissal." *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998). The court must first determine whether personal jurisdiction is proper under the forum state's long-arm statute — in this instance, Ohio Revised Code § 2307.382. *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir.2002); *Sterling Jewelers, Inc. v. M & G Jewelers, Inc.*, No. 5:14CV2030, 2015 WL 545778 at *1 (N.D.Ohio Feb.10, 2015). If it is, then the court decides whether exercising that jurisdiction is consistent with the Due Process Clause of the United States Constitution. *Bird, id.*

**Ohio's Long-Arm Statute**

Plaintiff alleges that Apothecare transacted business in Ohio, subjecting it to personal jurisdiction in Ohio. Section (A)(1) of Ohio's long-arm statute reads:

(A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:

(1) Transacting business in this state. . .

Given the "relatively slight" burden on Plaintiff to show personal jurisdiction and construing the pleadings and affidavits in Plaintiff's favor, the Court finds Plaintiff has established sufficient contacts with the State of Ohio, satisfying Ohio's long-arm statute.

The Ohio Supreme Court has held that to 'transact business' is "to prosecute negotiations; to carry on business; [or] to have dealings." *Faurecia Exhaust Sys., Inc. v. Walker*, 464 F. Supp. 2d 700, 705-06 (N.D. Ohio 2006), citing *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.*, 53 Ohio St. 3d 73, 75 (1990). The parties offer opposing and contradictory affidavits, each attesting to the business dealings in Ohio or lack thereof. However, when as here, the Court relies solely on the pleadings and affidavits, it must construe them in favor of the non-movant. When a plaintiff alleges a defendant transacted business in the state by contracting with an in-state plaintiff, the Ohio long-arm statute requires "some continuing obligation that connects the non-resident defendant to the state or some terms of the agreement that affect the state.'" *Dayton Superior Corp. v. Yan,* 288 F.R.D. 151, 161 (S.D.Ohio 2012) quoting *Shaker Construction Group, LLC v. Schilling,* No. 1:08cv278, 2008 WL 4346777, at *2 (S.D.Ohio Sep. 18, 2008).

Courts within this Circuit have held that "'[t]ransacting business' subsumes the narrower act of contracting." *Stern's Dept's Stores, Inc. v. Herbert Mines Assoc.,* No. C–1–98–844, 1999 U.S.Dist. LEXIS 10805, at *15 (S.D.Ohio July 8, 1999) (citations omitted) (quoting *Douglas v. Modern Aero, Inc.,* 954 F.Supp. 1206, 1210 (N.D.Ohio 1997)). The Supreme Court of Ohio has held that transacting business "encompasses 'to carry on

business,' and 'to have dealings,' and is broader ... than the word 'contract.'" *Goldstein v. Christiansen*, 70 Ohio St. 3d 232, 235 (1994) (quoting *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear Inc.,* 53 Ohio St.3d 73 (1990)). Thus, while the mere existence of a contract may not be enough to confer personal jurisdiction, a contract may qualify as "transacting business" under Ohio's long-arm statute, particularly when it imposes continuing obligations on the parties affecting the State of Ohio.

Plaintiff began to perform services under the Sell-Side Contract on September 2, 2016 and continued until August 21, 2017. (Weinmann Declaration, ECF DKT #8-1). Plaintiff analyzed the suitability of hundreds of potential buyers in the pharmacy and healthcare services industries. Plaintiff prepared a lengthy Confidential Information Memorandum on Apothecare to assist prospective buyers; did due diligence and recommended purchasers to Defendant. *Id*. On September 19, 2016, Defendant sent Plaintiff in Ohio a check in the amount of $15,000 for the first installment of the required commitment fee. *Id*. On November 21, 2016, Defendant sent another check to Plaintiff in the amount of $20,000 as the second installment of the commitment fee. *Id*. Representatives of Plaintiff and Defendant discussed by email three private equity buyers in late October, 2016. *Id*. Clearview Capital was one of those private equity buyers discussed. *Id*. There were ongoing email and telephone communications between Plaintiff and Defendant over a twelve-month period, and everyday communications for the initial three to four months. *Id*. Weinmann states that Dajie called him "at all times of the day and night, on the weekends, and on holidays." (*Id*. at ¶ 22). During their interactions, Plaintiff and Defendant shared information necessary to Plaintiff's analysis and recommendation which included Apothecare's financials, contracts, taxes,

operations, licensing and vendors. (*Id*. at ¶ 23).

The Court notes that the burden on Plaintiff is slight; and finds that the allegations in the Complaint, the provisions of the Sell-Side Contract and the continuing obligations between the parties over a twelve- to eighteen-month period qualify as "transacting business" and confer personal jurisdiction over Apothecare under Ohio's long-arm statute.

**Due Process**

If jurisdiction is proper under Ohio's long-arm statute, the Court must next determine whether Defendant's contacts with Ohio were sufficient under the Fourteenth Amendment Due Process Clause to allow the Court to exercise jurisdiction. In order for personal jurisdiction to comply with due process, Defendant must have "minimum contacts" with the forum state "so that the maintenance of the action does not offend 'traditional notions of fair play and substantial justice.'" *Citizens Bank v. Parnes*, 376 F.App'x 496, 502 (6th Cir. 2010). "Minimum contacts exist where a defendant's conduct and connection with the forum state are such that he would reasonably anticipate being haled into court there." *Id.* (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

There are two types of personal jurisdiction: 1) general jurisdiction, which requires "a showing that the defendant has continuous and systematic contacts with the forum state sufficient to justify the state's exercise of judicial power with respect to any and all claims the plaintiff may have against the defendant," and 2) specific jurisdiction, "which exposes the defendant to suit in the forum state only on claims that 'arise out of or relate to' a defendant's contacts with the forum." *Kerry Steel, Inc. v. Paragon Indus.*, 106 F.3d 147, 149 (6th Cir.1997).

The Sixth Circuit has concluded that "Ohio law does not appear to recognize general jurisdiction over non-resident defendants, but instead requires that the court find specific jurisdiction under one of the bases of jurisdiction listed in Ohio's long-arm statute." *Conn v. Zakharov,* 667 F.3d 705, 717 (6th Cir. 2012). Therefore, the Court will analyze whether it has personal jurisdiction over Apothecare under the specific jurisdiction prong of the due process inquiry.

The Sixth Circuit has articulated a three-part test for determining whether the exercise of specific personal jurisdiction comports with due process: (1) the defendant must purposefully avail itself of the privilege of acting in the forum state or causing a consequence in the forum state; (2) the cause of action must arise from the defendant's activities there; and (3) the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum to make the exercise of jurisdiction over the defendant reasonable. *Compuserve, Inc. v. Patterson*, 89 F.3d 1257 at 1263; *S. Mach. Comp. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir.1968).

Personal jurisdiction requires a forum-by-forum analysis. *J. McIntyre Mach. v. Nicastro*, 564 U.S. 873, 131 S.Ct. 2780, 2789 (2011). "The question is whether a defendant has followed a course of conduct directed at the society or economy within the jurisdiction of a given sovereign." *Id.*

**Purposeful availment**

To be subject to personal jurisdiction, the defendant must "purposefully avail itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). Importantly, the

plaintiff's unilateral activity will not satisfy the required contact between the defendant and the state. *Id.* The Supreme Court has held that "[w]here the defendant deliberately has engaged in significant activities within a State, or has created continuing obligations between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by the benefits and protections of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475-76 (1985).

"[T]he purposeful availment prong of the constitutional analysis is coextensive with the 'transacting business' prong of Ohio's long-arm statute" and if the "transacting business" prong confers personal jurisdiction over an out-of-state defendant, exercising personal jurisdiction over that defendant will not offend the "purposeful availment" prong of the constitutional analysis. *Dayton Superior Corp. v. Yan*, 288 F.R.D. 151, 168 (S.D. Ohio 2012).

Based upon the Court's "transacting business" analysis, the Court finds that Defendant purposefully availed itself of the privilege of conducting business in Ohio.

**"Arises under"**

Under the second prong, where "a defendant's contacts with the forum state are related to the operative facts of the controversy, the action will be deemed to have arisen from those contacts." *CompuServe, Inc. v. Patterson*, 89 F.3d 1257 at 1267. Plaintiff's Complaint alleges claims for Breach of Contract and Contractual Indemnification. Under Ohio law, "if the cause of action is for breach of that contract [with an Ohio resident] ... then the cause of

action naturally arises from the defendant's activities in Ohio." *ALTA Analytics, Inc. v. Muuss*, 75 F.Supp. 2d 773, 779 (S.D. Ohio 1999), quoting *Cole v. Mileti*, 133 F.3d 433, 436 (6th Cir.1998). Here, the substantive claims against Defendant arise from the alleged violations of the Sell-Side Contract, executed by Plaintiff in Ohio and partially negotiated by Defendant or its agents in Ohio. The agreement was entered into following up to six months of negotiations.

There is no question the dispute arises from Apothecare's alleged violations of the Sell-Side Contract's "success fee" clause. Defendant entered into this Agreement with an Ohio-based entity, knowing that any breach would cause injury in Ohio. Defendant accepted Ohio's legal protections, negotiated the Contract in part in Ohio and made payments to Plaintiff in Ohio in exchange for Plaintiff's efforts in assessing potential buyers of Defendant's assets. Therefore, the Court finds that Plaintiff's claims arise from Defendant's contacts with Ohio.

**<u>Substantial connection</u>**

Under the final prong of the specific jurisdiction analysis, the Court must determine whether "the acts of the defendant or consequences caused by the defendant [ ] have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *Kerry Steel*, 106 F.3d at 150. According to Sixth Circuit precedent, "where the first two prongs are satisfied, only the unusual case will not meet this third criterion." *Aristech Chem. Int'l Ltd. v. Acrylic Fabricators Ltd.*, 138 F.3d 624, 628 (6th Cir. 1998). To determine reasonableness, the Court must balance three factors: "the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining

relief." *Fortis Corporate Ins. v. Viken Ship Mgmt.,* 450 F.3d 214, 223 (6th Cir. 2006) (internal citations omitted).

As to the first factor, the facts show that Rudy Dajie, the CEO and sole member of Defendant Apothecare participated in continual telephone conference calls and emails with Plaintiff in Ohio over a period of months and up to a year. Defendant paid two installments on the Contract commitment fee; but then ceased payment, terminated the agreement and brokered a deal with one of the buyers vetted by Plaintiff's efforts. In his Declaration, Dajie states that the "location of the investment bankers and any other advisors used by Apothecare in connection with the sale or recapitalization of the company was not material." (ECF DKT #5-1 at ¶ 15). The other side of the proverbial coin is that a sophisticated enterprise like Apothecare cannot now be heard to complain about the burden of this litigation between residents of two geographically distant states like Massachusetts and Ohio.

As to the second factor, the state of Ohio has a strong policy interest in ensuring the implementation of its laws and the enforcement of any contracts made with its citizens.

Lastly, Plaintiff's pursuit of its breach of contract and indemnification claims in order to recover its "success fee" and to recoup its expenses demonstrates Plaintiff's strong intention to obtain relief in court.

The Court determines that this litigation is not that rare instance where Defendant's contacts with Ohio are so minimal that the burden outweighs the interests of Ohio.

**Transfer - 28 U.S.C. § 1404(a)**

Having determined that the Court has personal jurisdiction over Defendant, the Court must next determine whether to transfer the action against Apothecare to Massachusetts.

When deciding whether to transfer a case under 28 U.S.C. § 1404(a), the Sixth Circuit has stated that "a district court should consider the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric of 'interests of justice.'" *Moore v. Rohm & Haas Co.*, 446 F.3d 643, 647 n. 1 (6th Cir.2006).

Private interest factors include: "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Gulf Oil v. Gilbert,* 330 U.S. 501, 508 (1947).

Public interest factors include "[d]ocket congestion, the burden of trial to a jurisdiction with no relation to the cause of action, the value of holding trial in a community where the public affected live, and the familiarity of the court with controlling law." *Jamhour v. Scottsdale Insurance Co.,* 211 F.Supp.2d 941, 945 (S.D. Ohio 2002) *citing Gulf Oil,* 330 U.S. at 508.

"It is well established that the decision whether to transfer venue is vested in the sound discretion of the trial court." *Midwest Motor Supply Co., Inc. v. Kimball*, 761 F.Supp. 1316 (S.D.Ohio 1991); *see Jamhour*, 211 F.Supp.2d at 946.

In considering these factors, the Court finds that transfer to the United States District Court for the District of Massachusetts is appropriate. The alleged breach of contract occurred in Massachusetts and/or involved a deal with a neighboring Connecticut company, Clearview Capital. Most all of the material witnesses with knowledge of the recapitalization

of Apothecare and the degree of EdgePoint's involvement in the transaction live in Massachusetts or in nearby Connecticut. This factor weighs strongly in favor of transfer: "[T]he convenience of potential non-party witnesses, who are not subject to the control of the parties, is a particularly weighty consideration, because it is generally presumed that party witnesses will appear voluntarily in either jurisdiction, but non-party witnesses, with no vested stake in the litigation, may not.". *B.E. Tech., LLC v. Groupon, Inc.*, 957 F. Supp. 2d 939, 945 (W.D. Tenn. 2013). Documentary evidence and other sources of proof will be found in Massachusetts. The Court finds that litigation and trial in Massachusetts will be easier, more expeditious and less costly.

### III. CONCLUSION

For these reasons, the Motion (ECF DKT #5) of Defendant Apothecare Pharmacy, LLC to Dismiss for Lack of Personal Jurisdiction and Improper Venue or, in the alternative, to Transfer is granted in part and denied in part. The Motion to Dismiss is DENIED but the Motion to Transfer is GRANTED pursuant to 28 U.S.C. § 1404(a). The above-captioned case is transferred to the United States District Court for the District of Massachusetts for further proceedings.

**IT IS SO ORDERED.**

                                               **s/ Christopher A. Boyko**
                                               **CHRISTOPHER A. BOYKO**
                                               **United States District Judge**

**Dated: March 19, 2019**